UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TAPANGA HARDEMAN, DANIEL WILLIAMS, LEWIS MYLES, QUENTA LAMAR WASHINGTON, and LAVONTE MUREL, individually and on behalf of others similarly situated<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF LAKE, OFFICE OF THE LAKE COUNTY SHERIFF, SHERIFF MARK CURRAN, CHIEF DAVID WATHEN, and JOHN DOE OFFICERS and SUPERVISORS,<br><br>Defendants. | Case No. 17-cv-08729<br><br>Judge Sharon Johnson Coleman |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Tapanga Hardeman, on behalf of herself and all affected inmates, filed this action against County of Lake, Office of the Lake County Sheriff, Sheriff Mark Curran, Chief David Wathen, and John Doe Officers and Supervisors (collectively, "Lake County Corrections" or "Defendants") for violating the Civil Rights Act of 1871, 42 U.S.C.§ 1983, pursuant to the Eighth and Fourteenth Amendment. County of Lake is also a defendant from which Hardeman seeks indemnification in the event that the individually named defendants are found liable for actions performed in the course of their employment. Hardeman now submits her First Amended Complaint, moves this Court for an order certifying this case to proceed as a class action pursuant to Federal Rule of Civil Procedure 23, and moves this Court to appoint the O'Connor Law Firm, LTD., as Class Counsel. (Dkt. 40.) For the reasons stated herein, Plaintiffs' motion is granted in full.

1

**Background**

      Hardeman and the putative class members were being held at the Lake County Adult Correctional Facility in Waukegan, County of Lake, IL on or about November 8, 2017. At that time, Lake County Corrections turned off the water and it was not turned on again until November 10, 2017, resulting in a shutoff lasting two and a half days. While the water was turned off, Lake County provided detainees with five bottles of water per day to use for their personal needs, such as drinking, hygiene, cooking, and medical purposes. Detainees were provided a communal barrel of water located in the "pod" to use for bathing, cleaning their cells, and flushing the toilet. During this time, detainees complained that they were deprived of sufficient water to take medication and to stay hydrated. While the water was shut off, detainees also allege that they were restricted to flushing the toilets in their cells only when feces were present, and were totally prohibited from flushing the commodes at night. Detainees contend that bodily excrement sat in toilets for prolonged periods, which attracted more vermin to the jail cells and caused a stench that made detainees sick, agitated, and sleep-deprived.

      Hardeman filed this Complaint on December 4, 2017, alleging that Lake County Corrections violated her and other detainees' Eight and Fourteenth Amendment rights by intentionally depriving them of adequate amounts of water for three days, which caused them to live in unsafe, inhumane and unsanitary conditions, and to suffer from various physical ailments. Lake Country Corrections filed a motion to dismiss on February 22, 2018. The Court denied the motion to dismiss, also denying qualified immunity. Lake County Corrections appealed that order to the Seventh Circuit, which affirmed this Court's decision. Hardeman now seeks to certify this case to proceed as a class action pursuant to Federal Rule of Civil Procedure 23 and moves this Court to appoint the O'Connor Law Firm, LTD as class counsel.

      Hardeman seeks to organize the class into two subclasses:

<u>Subclass A:</u> all persons present in the Lake County Adult Correctional Facility between November 7, 2017, and November 10, 2017, being held as pretrial detainees
<u>Subclass B:</u> all persons present in the Lake County Adult Correctional Facility between November 7, 2017, and November 10, 2017, as post-conviction inmates

**Legal Standard**

To be entitled to class certification, Plaintiffs must demonstrate that they satisfy all of the requirements of Federal Rule of Civil Procedure 23(a) and one of the three alternatives set forth in Rule 23(b). *Messner v. Northshore Univ. Health Sys.*, 669 F.3d 802, 811 (7th Cir. 2012). Rule 23(a) requires that a proposed class meet requirements of numerosity, typicality, commonality, and adequacy of representation. *Id.* When certification is sought under Rule 23(b)(3), as it is here, the proponents of the class must also show that questions of law or fact common to the members of the proposed class predominate over questions affecting only individual class members and, relatedly, that a class action is superior to other available methods of resolving the controversy. *Costello v. BeavEx, Inc.*, 810 F.3d 1045, 1059 (7th Cir. 2016) (citing Fed. R. Civ. P. 23(b)(3)).

Rule 23 "does not set forth a mere pleading standard." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33, 133 S.Ct. 1426, 185 L.Ed.2d 515 (2013) (internal quotation marks and citation omitted). When factual disputes bear on matters vital to certification, the Court must receive evidence and resolve those disputes prior to certifying the class. *Parko v. Shell Oil Co.*, 739 F.3d 1083, 1085 (7th Cir. 2014). Certification is proper only if, "after rigorous analysis," the Court is satisfied that Rule 23's prerequisites have been met. *Comcast Corp.*, 569 U.S. at 33. "Plaintiffs bear the burden of showing that a proposed class satisfies the Rule 23 requirements but they need not make that showing to a degree of absolute certainty. It is sufficient if each disputed requirement has been proven by a preponderance of evidence." *Messner*, 669 F.3d at 811 (citations omitted). The Seventh Circuit has repeatedly reiterated that the focus of class certification must be on Rule 23 and that class certification proceedings cannot be allowed to turn into a preemptive determination of the merits. *See Bell v. PNC Bank, Nat. Ass'n*, 800 F.3d 360, 375 (7th Cir. 2015).

**Analysis**

Defendants spend much of their response brief arguing the merits of the case. The Court reminds Defendants that a finding on the merits is inappropriate at this stage. The Court will consider the merits of this case only to the extent that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied. *See Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 466, 133 S. Ct. 1184, 1195, 185 L. Ed. 2d 308 (2013).

Defendants argue that the class should not be certified given that there are factual discrepancies in the affidavits Hardeman attached to her motion, including whether the shut-off happened on November 7, 2017 or November 8, 2017. As to those dates, Defendants have presented enough evidence to establish that the water in the facility was shut off on November 8, 2017 and restored on November 10, 2017. Thus, the Court will narrow the class to include inmates housed in the correctional facility between November 8, 2017 and November 10, 2017. *See Messner*, 669 F.3d at 825 (noting that a court may refine class definitions, including when the proposed definition is overly broad).

Defendant also take issue with Hardeman relying only on affidavits to support her motion and argue that she must have conducted further discovery. Hardeman need not present more than affidavits in support of her motion at this point, so Defendants' argument is rejected. *See Bell v. PNC Bank, Nat. Ass'n*, 800 F.3d 360, 371 (7th Cir. 2015) (noting that a court may receive evidence by affidavit to resolve factual issues pertaining to class certification issues). Defendants will have an opportunity to contest the merits of the case and the evidence Plaintiffs will rely on at later stages of litigation.

1. Rule 23(a)

*a. Numerosity*

Plaintiffs have demonstrated that their proposed classes are sufficiently numerous for class treatment. Numerosity requires that a class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "[A] plaintiff does not need to demonstrate the exact number of class members as long as a conclusion is apparent from good-faith estimates." *Barragan v. Evanger's Dog and Cat Food Co.*, 259 F.R.D. 330, 333 (N.D.Ill. 2009) (Darrah, J.). Here, Plaintiffs have presented evidence that the proposed class contains at least fifty members and argue that number could be higher than 500 members. (Dkt. 40-1.) Joinder of more than fifty plaintiffs would certainly be impracticable. *See Swanson v. Am. Consumer Indus., Inc.*, 415 F.2d 1326, 1333 n. 9 (7th Cir. 1969) (holding that a proposed class of 40 was "a sufficiently large group to satisfy Rule 23(a)"); *Marquez v. Weinstein, Pinson & Riley, P.S.*, No. 14 C 739, 2017 WL 4164170, at *5 (N.D. Ill. Sept. 20, 2017) (Tharp, J.) ("Although there is no 'magic number' of class members for numerosity purposes, when a class reaches forty, joinder is typically considered impracticable"). Accordingly, Plaintiffs' proposed class satisfies the numerosity requirement of Rule 23(a).

*b. Commonality*

Plaintiffs have also demonstrated commonality, which means the existence of "'questions of law or fact common to the class.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 346, 131 S.Ct. 2541, 180 L.Ed.2d 374 (2011) (quoting Fed. R. Civ. P. 23(a)(2)). "What matters to class certification … [is] the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014) (quoting *Wal-Mart*, 564 U.S. at 350). "A common nucleus of operative fact is usually enough to satisfy" this requirement. *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998).

Defendants argue that Hardeman cannot satisfy commonality because she does not offer significant proof that there was a common policy of practice that harmed the proposed class. Defendants argue there is no proof that inmates suffered "any harm at all" as a result of the shutoff. To the contrary, Hardeman provides several affidavits outlining deplorable conditions as a result of the water shutoff. These include inmates feeling dehydrated, having feces accumulating and festering in toilets overnight, being forced to use unsanitary water for personal hygiene, and being punished for requesting more water, among others. Hardeman has clearly provided evidence of a common harm to her proposed class.

Additionally, Defendants admit that water was shut off to all inmates between November 8, 2017 and November 10, 2017. They argue that the crux of the legal issue here is whether the conditions resulting from the shutoff rise to a constitutional violation and that that determination is highly individualized and does not rely on class-wide proof. Defendants misrepresent how individualized the claims in this case are.

The core of Hardeman's case is that she and all members of the proposed class had their right to humane conditions of confinement violated pursuant to uniform policies, customs and practices implemented by Defendants during the water shutoff. The same defendants who caused the shutoff implemented the water bottle and trash can system, subjected all putative class members to the effects of feces and urine accumulating in their cells' toilets, and punished pretrial detainees by placing them on lockdown for requesting more water. The constitutional claims for all putative class members therefore arise from the same conduct and practices of the same defendants. Furthermore, that plaintiffs might require individualized relief or some individualized proof does not necessarily preclude class certification. *See Bell v. PNC Bank, Nat. Ass'n*, 800 F.3d 360, 379 (7th Cir. 2015) (noting that Rule 23 does not requires that every question be common and that it is routine in

class actions to have a final phase in which individualized proof is submitted). Accordingly, Hardeman has satisfied Rule 23's commonality requirement.

*c. Typicality*

Plaintiffs' claims are typical if they arise from the same event, practice, or course of action that gives rise to the claims of other class members; and the claims of the Plaintiffs and the class members are based on the same legal theory. *Keele*, 149 F.3d at 595.

Here, Plaintiffs' and the potential class members' claims arise from the same course of action of Defendants: shutting off the water and allegedly subjecting the inmates to inhumane conditions. The claims of Plaintiffs and the potential class members also arise from the same legal theories: violations of the Eighth and Fourteen Amendments. Accordingly, Plaintiffs have satisfied the typicality requirement.

*d. Adequacy*

The final requirement under Rule 23(a) is that the representative party will "fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). "[A]dequacy of representation is composed of two parts: the adequacy of the named Plaintiffs' counsel, and the adequacy of representation provided in protecting the different, separate, and distinct interest of the class members." *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 598 (7th Cir. 1993) (quotation omitted). To be an adequate representative, the named Plaintiffs must not have "antagonistic or conflicting claims." *Id.* at 598.

Plaintiffs' attorneys appear qualified, and no apparent conflicts exist between the named Plaintiffs and the class. Additionally, Hardeman has allegedly suffered the very harm she contends the whole class has suffered—inhumane conditions resulting from the water shutoff. Accordingly, Hardeman has satisfied the adequacy requirement.

**2. Rule 23(b)(3)**

Having determined that Hardeman meets Rule 23(a)'s threshold prerequisites, the Court turns to the Rule 23(b)(3) requirements. Hardeman must demonstrate that "questions of law or fact common to class members predominate over any questions affecting only individual members" and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

*a. Predominance*

"Rule 23(b)(3)'s predominance requirement is satisfied when common questions represent a significant aspect of a case and can be resolved for all members of a class in a single adjudication." *Messner*, 669 F.3d at 815 (quotation omitted). While common questions of law or fact must predominate, they need not be exclusive. *See Tatz v. Nanophase Techs. Corp.*, No. 01 C 8440, 2003 WL 21372471, at *9 (N.D. Ill. June 13, 2003) (Andersen, J.). This requirement is met when "common nucleus of operative facts and issues underlies the claims brought by the proposed class." *Messner*, 669 F.3d at 815 (internal quotations omitted). Predominance is a qualitative concept that determines whether "there are more common issues or more individual issues, regardless of relative importance." *Parko v. Shell Oil Co.*, 739 F.3d 1083, 1085 (7th Cir. 2014). Defendants argue that Plaintiffs cannot meet this requirement because individualized issues predominate.

Defendants argue that it would be difficult to determine liability on a class-wide basis because the constitutional claims are highly individualized. Because many of the detainees were treated differently, they argue, the analysis and outcome of their individual cases would differ. However, courts have found class treatment appropriate where "certain conditions [of confinement] common to all ... are unlawful." *See Dunn v. City of Chicago*, 231 F.R.D. 367 (N.D. Ill. 2005), amended on reconsideration on other grounds, No. 04 C 6804, 2005 WL 3299391 (N.D. Ill. Nov. 30, 2005) (Gettleman, J.). This is especially true where the conditions stem from jail policies or practices that

8

are applied uniformly to all prisoners. *See Young v. County of Cook*, 2007 WL 1238920, at *7 (N.D.Ill. Apr. 25, 2007) (Kennelly, J.).

Here, the predominant legal issue is whether Defendants created unconstitutionally adverse conditions of confinement for all detainees present during the water shutoff, making them liable for resulting injuries to the putative class members. Many of the conditions of confinement are common to all class members. For example, the festering feces overnight, dehydration, and lack of sanitary water for personal hygiene. Based on the limited evidence before the Court, each of these conditions of confinement is the result of a uniform policy or practice by the correctional facility. The putative class will rely on these facts, among others, to prove a violation of the Eighth and Fourteenth Amendments. Accordingly, liability will not depend on each plaintiff's individual circumstances because the class members will largely rely on the same issues of fact and law to support their claim. Whether some detainees were subject to different degrees of inhumane conditions will not prevent the court from analyzing the shared conditions suffered by all the detainees.

Defendants also argue that individualized analysis of Defendants' conduct precludes class certification. The existence of individualized defenses, however, does not preclude class certification. *See Dunn*, 231 F.R.D. at 377. This argument also fails.

To the extent that Defendants argue that predominance cannot be satisfied because of individualized damages calculations, that argument is rejected. "It is well established that the presence of individualized questions regarding damages does not prevent certification under Rule 23(b)(3)." *Messner*, 669 F.3d at 815 (citing *Wal–Mart v. Dukes*, 131 S.Ct. at 2558). Factual issues around the gender of the detainees, number of individuals in a cell, quality of ventilation, and other issues can be resolved individually during the damages stage of litigation. Accordingly,

individualized damages calculations will not prevent certification here, where common questions and factual issues regarding liability predominate.

*b. Superiority*

Finally, Plaintiffs must show that proceeding as a class action is superior to alternative methods of resolving the controversy. *See* Fed. R. Civ. P. 23(b)(3). This requirement is satisfied if "a class action would achieve economies of time, effort, and expense, and promote ... uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 615, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997) (internal citation and quotation marks omitted). Here, common issues of law and fact predominate, so both discovery and litigation will be more efficiently conducted pursuant to class certification. Defendants have not presented arguments objecting to the superiority requirement. Accordingly, it has been satisfied.

**Conclusion**

For these reasons, this Court grants Plaintiff's motion for class certification [40]. The Court certifies the following sub-classes:

Subclass A: all persons present in the Lake County Adult Correctional Facility between November 8, 2017, and November 10, 2017, being held as pretrial detainees

Subclass B: all persons present in the Lake County Adult Correctional Facility between November 8, 2017, and November 10, 2017, as post-conviction inmates

**IT IS SO ORDERED.**

Date: 11/17/2020

Entered: _____
SHARON JOHNSON COLEMAN
United States District Judge